David Phillip Vallejos
4994 Shadydale LN
Corona, CA 92878
(714) 609-9982
soundinstaller441@gmail.com

Plaintiff in Pro Se



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CALIFORNIA

DAVID PHILLIP VALLEJOS,　　　)
　　　　　　　　　　　　　　)
Plaintiff,　　v.　　　　　　)
　　　　　　　　　　　　　　)
ROB BONTA, in his Official　 )
　　　　　　　　　　　　　　)
Capacity  as Attorney General for the　)
　　　　　　　　　　　　　　)
State of California and CHAD　)
　　　　　　　　　　　　　　)
BIANCO in his official capacity as　)
　　　　　　　　　　　　　　)
Riverside County Sheriff　　　)
　　　　　　　　　　　　　　)

Defendant.

Civil Action **EDCV25-00350-KK-SP**

Memorandum in Support of Motion for
Preliminary Injunction

## TABLE OF CONTENTS

I.    Introduction ........................................................................................1

II.   Statement of Fact ...............................................................................2

III.  Argument ............................................................................................3

  A.   Standard for a Preliminary Injunction ..........................................3

  B.   County's Rules Demonstrate it is Liable Pursuant to *Monell*. .........3

  C.   Plaintiff Has a Strong Likelihood of Success on the Merits .............4

  D.   Plaintiffs' Conduct is Covered by the Second Amendment's Plain Text .......5

  E.   There is No Historical Tradition of Disarming Individuals Like Plaintiff......9

  F.   Plaintiffs Due Process Rights Have Been Violated ........................16

IV.  Plaintiff will suffer irreparable harm ...............................................21

V.   Granting the TRO/PI is in the Public Interest and Serves Equity ..................22

VI.  Waiver of Bond is Proper and Appropriate Under These Circumstances .......22

VII. This Court Should Consolidate Pursuant to Rule 65(a)(2) ..............................23

VIII Conclusion ........................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Addington v. Texas*, 441 U.S. 418 (1979) ...............................................................18, 19

*Allen v. District of Columbia*, Civil Action No. 20-cv-2453 (TSC), 2023 U.S. Dist.
    LEXIS 60950 (D.D.C. Mar. 31, 2023) ............................................................13

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).................3

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) ...........................................3,7, 22, 23

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ....................................18

*Davis v. Yenchko*, 2023 Ill. Cir. LEXIS 4 ...........................................................12, 13

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..........................................6, 7, 8

*Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S.

    Dist. LEXIS 169794 (D. Mont. Sep. 16, 2020)..................................................24

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014).............................22

*East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838 (N.D. Cal. 2018) .....23

*Elliott v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996) ...................................................23

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................................21

*Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020)...................8

*Ezell v. City of Chi.*, 651 F.3d 684 (7th Cir. 2011).................................................22

*Foucha v. Louisiana*, 504 U.S. 71 (1992).................................................................19

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) ...........................................23

*Kennedy v. Louisiana*, 554 U.S. 407 (2008)..............................................................8

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ...................................22

*Lara v. Comm'r Pa. State Police*, No. 21-1832, 2024 U.S. App. LEXIS 1159 (3d Cir. Jan. 18, 2024) ...........................................................................................7

*Mai v. United States*, 974 F.3d 1082 (9th Cir. 2020) ................................................14

*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) .................17

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ..................................................21

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ..............................................4, 5

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997)....................................22

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ....................passim

*People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319 (9th Cir. 1985) .................................................................23

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) .................................................22

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)................................................22

*Santosky v. Kramer*, 455 U.S. 745 (1982)................................................................18

*Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232 (1957).........................12

*Stokes v. United States DOJ*, 551 F. Supp. 3d 993 (N.D. Cal. 2021)........................14

*Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016).......................14

*U.S. v. Perez-Garcia,* 96 F.4th 1166 (9th Cir. 2024) .........................................passim

*United States v. Connelly*, No. EP-22-CR-229(2)-KC, 2023 U.S. Dist. LEXIS 62495 (W.D. Tex. Apr. 6, 2023) ...........................................................................14, 15

*United States v. Dooley*, 364 F.Supp. 75 (E.D.Pa.1973) ...........................................18

iv

*United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993)......19, 20, 21

*United States v. McMichael*, 350 F. Supp. 3d 647 (W.D. Mich. 2018) ..................14

*United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024)
.............................................................................................................passim

*United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012) ...........................................14

*Utz v. Cullinane*, 520 F.2d 467 (D.C. Cir. 1975) ........................................................18

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013)......................................22

*Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) ................19, 20

*Ward v. Monroeville*, 409 U.S. 57 (1972)....................................................................20

*Weaver v. City of Montebello*, 370 F.Supp.3d 1130 (C.D. Cal. 2109)....................23

*Worth v. Jacobson*, No. 23-2248, 2024 WL 3419668 (8th Cir. July 16, 2024)8, 13, 16

*Young v. Hawaii*, 896 F.3d 1044 (9th Cir. 2018) ..........................................................1

**Statutes**

42 U.S. Code § 1983.......................................................................................................4

R.R.S.Neb.1943, § 83-180............................................................................................19

18 U.S.C. § 3142(a) ......................................................................................................12

18 U.S.C.A. § 922(g)(8) .......................................................................................passim

California Penal Code
§26150(a)........................................................................................................4

**Other Authorities**

11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995)....................................................................................................................21

2000 Haw. Att'y Gen. Reps., *Firearm Registrations in Hawaii, 2000 et seq.* ...........1

https://crsreports.congress.gov/product/pdf/R/R47571 .............................................14

https://riversideca.gov/rpd/sites/riversideca.gov.rpd/files/pdf/ccwdojform.pdf

**Rules**

Federal Rules of Civil Procedure 65(a)(2) .............................................................24

California Penal Code 26150 and 26155

**Treatises**

*'Not all History is Created Equal': In the Post-Bruen World, the Critical Period for Historical Analogues Is when the Second Amendment Was Ratified in 1791, and not 1868*, SSRN, Oct. 1, 2022, https://bit.ly/3CMSKjw ................................7

Henry Care, *English Liberties, or the Free-born Subject's Inheritance* 329 (6th ed. 1774)....................................................................................................................14

Henry F. Buswell, *The Law of Insanity in its Application to the Civil Rights and Capacities and Criminal Responsibility of the Citizen* 17 (1885) ........................14

## I. __Introduction__

At issue in this case is the **Denial of Plaintiffs Concealed Carry Weapons Permit and the Burdensome process to recieve one.** That action is a violation of Plaintiff's constitutional rights.

Plaintiff's application and appeal was denied even though Plaintiff is not a disqualified Person verified by DOJ and FBI NICS. *See* Complaint ¶ 69. *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 142 S. Ct. 2111 (2022) requires that the government show a historical tradition of restricting firearm rights in a relevantly similar manner. Pursuant to *Bruen*, this denial is unconstitutional because there is no historical practice of prohibiting individuals from Second Amendment rights simply because they have been investigated for a crime or had a now lapsed protection order placed against them. The Supreme Court's recent holding in *United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024) also supports a finding that County's policies are unconstitutional. There, the Supreme Court only upheld 18 U.S.C.A. § 922(g)(8) because there had been a judicial determination that Zachary Rahimi was currently dangerous. And Mr. Rahimi's disarmament was temporary. Here, Plaintiff is being

Risking arrest for carrying his concealed weapons in public. Thus, County's policies bear none of the hallmarks which the Supreme Court found critical in upholding 922(g)(8).

Furthermore, Plaintiff's denial and the relevant rules violate due process because County does not provide adequate procedures to safeguard against erroneous **CCW Appeals** denials. This Court should issue a preliminary injunction which orders State and County to end CCW Scheme and enjoin the relevant portion of State's and County's rules.

## II.  <u>Statement of Fact</u>

Plaintiff Vallejos is an adult male, U.S. citizen and resident of Riverside County. Complaint ¶ 1.  Plaintiff Vallejos legally owns a firearm. Complaint ¶ 63. Plaintiff Vallejos is not disqualified under California or federal law from owning, possessing or carrying a firearm. Complaint ¶ 64.  Plaintiff Vallejos has completed all requirements under California law and County regulations to be issued a CCW license. Complaint ¶ 65.  Plaintiff Vallejos applied for a CCW in or about the month of July 2022 then in January 2024 and submitted all necessary documentation. Complaint ¶ 66.  On June 8th[th], 2023, Plaintiff received an email from the PERMITIUM a private company that processes CCW applications that informed him his CCW application has been denied. Then on February 29th 2024

My application was withdrawn. I then filed BOF1031 to Appeal in March 2024. My appeal was denied on 07/01/2024

# III. Argument

## A. Standard for a Preliminary Injunction

"The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). Alternatively, an "injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

## B. County's Rules Demonstrate it is Liable Pursuant to *Monell*.

County is liable for violating Plaintiff's Second Amendment rights. "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (footnotes omitted).

3

Plaintiff was denied a carry permit pursuant to the authority given to the Riverside County Sheriff by the Rules. *See* Complaint ¶ 69. Thus, he was denied via an official policy of County.

The Rules expressly allow RSO to deny permits based on **"GOOD MORAL CHARACTER"** Penal code Section §26150(a). Pursuant to *Monell*, County is directly liable for denying Plaintiff his permit application.

## C. Plaintiff Has a Strong Likelihood of Success on the Merits

"[T]he Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Bruen*, 142 S.Ct. at 2135. Accordingly, the "general right to public carry" cannot be restricted absent "*exceptional* circumstances." *Bruen*, 142 S. Ct. at 2156 (emphasis added). To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct,

4

the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. It is the government's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127; *see also id*. at 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). If the government fails to meet its burden, then the government's restriction is unconstitutional.

**D. Plaintiff's Conduct is Covered by the Second Amendment's Plain Text**

If the plaintiff's proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. The Supreme Court has defined all of the Second Amendment's key terms. "The people" means, at a minimum, "all Americans"; "Arms" includes "all instruments that constitute bearable arms"; and, most relevant here, to bear simply means to "carry." *District of Columbia v. Heller*, 554 U.S. 570, 580–82, 584 (2008). Here, Plaintiff is one of the people.

In *Perez-Garcia* the Ninth Circuit found the litigants' status as pretrial releasees did not remove them from the People. Furthermore, one of the litigants had previously been convicted of a misdemeanor crime. "As to Fencl, specifically, we cannot conclude that his prior misdemeanor conviction or arrests should

5

operate to categorically exclude him from the national community." *U.S. v. Perez-Garcia,* 96 F.4th 1166 1180 (9th Cir. 2024). "We therefore conclude that Fencl and Perez-Garcia are among 'the people'" *Id.* Pursuant to circuit precedent Plaintiff is part of the People that has Second Amendment rights. Plaintiff is an American who seeks to carry bearable arms for self-defense. As in *Bruen,* these undisputed facts end the textual inquiry: "the plain text of the Second Amendment protects [Plaintiff's] proposed course of conduct—carrying handguns publicly for self-defense." 142 S. Ct. at 2134. Accordingly, under *Bruen*'s unambiguous directions, "the burden falls on [the County] to show that [the challenged restriction] is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2135. Thus, County "must identify a historical analogue that curtails the right to peaceably carry handguns […] for self-defense to a comparable degree, with a comparable severity, and with a comparable blanket enforcement." *Baird v. Bonta,* 81 F.4th 1036, 1047 (9th Cir. 2023).

The relevant time period for the historical analogue must be the Founding, centering on 1791. *Bruen,* 142 S.Ct. at 2135–36; *see also* Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen World, the Critical Period for Historical Analogues Is when the Second Amendment Was Ratified in 1791, and not 1868,* SSRN, Oct. 1, 2022, https://bit.ly/3CMSKjw. That is because "'[c]onstitutional rights are enshrined with the scope they were understood to have

when the people adopted them.'" *Bruen*, 142 S. Ct. at 2136, quoting *Heller*, 554

U.S. at 634–35. Although the Court in *Bruen* noted an academic debate

surrounding whether courts should look to 1868 and Reconstruction (when the

Fourteenth Amendment was adopted), the Court found no need to address the point

as the result with respect to carry was the same. *Bruen*, 142 S. Ct. at 2138. But

there can be no doubt that the actual analysis of the Court is focused on 1791. *See*

*Lara v. Comm'r Pa. State Police*, No. 21-1832, 2024 U.S. App. LEXIS 1159, at

*16 (3d Cir. Jan. 18, 2024) (Footnotes omitted) ("the Second Amendment should

be understood according to its public meaning in 1791.")[3].

While the Court in *Rahimi* found it "unnecessary" to decide formally

whether courts should "primarily rely on the prevailing understanding" in 1789 or

1868 (*Rahimi* at slip op. 8 n.1), the Court did not even cite (much less rely on) a

single Reconstruction Era or later statute, practice or tradition. *See also Worth v.*

---

[3] *Bruen's* characterization of the Court's precedents as assuming that 1791 is the
proper answer is an understatement. In *Espinoza v. Montana Department of
Revenue*, 140 S. Ct. 2246 (2020), for example, the Court held that "more than 30"
provisions of state law enacted "in the second half of the 19th Century" could not
"evince a tradition that should inform our understanding of the Free Exercise
Clause" when those provisions lacked grounding in Founding Era practice. *Id.* at
2258–59 (emphasis added). And even if modern laws alone could demonstrate a
broad tradition of a regulation, there must at least be a strong showing that such
laws are common in the states, i.e., many more than six states. *See Kennedy v.
Louisiana*, 554 U.S. 407, 423–26 (2008) (only six states permitting death penalty
for child rapists shows national consensus against it).

*Jacobson*, No. 23-2248, 2024 WL 3419668, at *12 (8th Cir. July 16, 2024) ("[I]t is
questionable whether the Reconstruction-era sources have much weight.")

The historical analogues the State points to must be "representative."
Historical "outlier" requirements of a few jurisdictions or of territorial governments
are to be disregarded. *Bruen*, 142 S. Ct. at 2133, 2153, 2147 n.22 & 2156. This means
regulations from only a handful of states or those that cover only a small portion of
the population are not enough to demonstrate that modern regulations are consistent
with the Second Amendment. *Id.* at 2155 (rejecting regulations applying to only 1%
of the American population). *Bruen* also categorically rejected reliance on laws
enacted in the Territories, including expressly "Arizona, Idaho, New Mexico,
Oklahoma," holding that such laws "are most unlikely to reflect 'the origins and
continuing significance of the Second Amendment' and we do not consider them
'instructive.'" *Bruen*, 142 S. Ct. at 2154 (quoting *Heller*, 554 U.S. at 614).

The historical analogues must be "relevantly similar," which is to say that they
must burden ordinary, law-abiding citizens' right to carry for self-defense in a
similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132. *Bruen* held that
the inquiry into whether an analogue is proper is controlled by two "metrics" of "how
and why" any restriction was historically imposed during the Founding era. *Id.* at
2133. "[W]hether modern and historical regulations impose a comparable burden on
the right of armed self-defense and whether that burden is comparably justified are

8

'*central*' considerations when engaging in an analogical inquiry." *Id.* (emphasis in original). In attempting the "affirmatively prove" that its restrictions on public carry must refer to historical analogues at the Founding and show those meet *Bruen*'s "how" and "why" standard. 142 S. Ct. at 2127, 2133.

The Supreme Court's recent decision in *United States v. Rahimi* reaffirmed *Bruen's* holding that firearms regulations must be justified via relevantly similar historical laws. "For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Rahimi* at *6. However, *Rahimi* cautioned "[e]ven when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id.*

## E. There is No Historical Tradition of Disarming Individuals Like Plaintiff

The U.S. Supreme Court recently addressed a similar issue in *United States v. Rahimi*. There, the Supreme Court upheld a facial challenge to 18 U.S.C.A. § 922(g)(8). The law in *Rahimi* was permissible because there is a regulatory tradition of restricting firearm possession and use by those *currently* "found by a court to present a threat to others." *Rahimi* at *9. *Rahimi's* core holding is "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Rahimi*, at *11.

9

The Supreme Court justified its holding by relying on two historical types of laws called sureties and "going armed" laws[4]. These laws demonstrates that early American societies typically dealt with firearms violence by removing the right to carry firearms only to those that had been judged unsafe to carry firearms. "That matches the surety and going armed laws, which involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Rahimi*, at \*9. *Rahimi* also observed that the prohibition on Mr. Rahimi's firearm rights was temporary and only existed as long the restraining order was in place. "Moreover, like surety bonds of limited duration, Section 922(g)(8)'s restriction was temporary as applied to Rahimi. Section 922(g)(8) only prohibits firearm possession so long as the defendant "is" subject to a restraining order. *Rahimi,* at \*10. Thus, *Rahimi* supports rejecting the use of lapsed restraining orders to justify disarming Plaintiff. Finally, the Supreme Court found "in holding that Section 922(g)(8) is constitutional as applied to Rahimi, we reject the Government's contention that Rahimi may be disarmed simply because he is not "responsible." *Rahimi*, at \*11. Thus, *Rahimi* supports Plaintiff's claim HPD's policies violate the Second Amendment because Plaintiff has not received a current judicial determination that he is dangerous. Furthermore, *Rahimi* supports the continued propriety of circuit precedent.

---

[4] Both of these authorities pre-date 1791.

10

The Ninth Circuit in *Perez-Garcia* found several criteria a restriction must satisfy to be constitutional.

> The Government in this case acted in accordance with this historical tradition. The Government established an individualized need for applying the firearm condition against each Appellant in adversarial proceedings before two sets of neutral judicial officers. Those neutral judicial officers determined based on the evidence presented that Appellants posed a risk while on bail and that the firearm condition was the least restrictive way to assure the safety of the community as well as their appearances in court.

*U.S. v. Perez-Garcia*, 96 F.4th 1166, 1190 (9th Cir. 2024)

In doing so it endorsed then Judge Barret's dissent in *Kanter v. Barr*. "[T]he Bail Reform Act's firearm condition is a clear exercise of Congress' historical legislative power to disarm those who are "***judged*** to be a threat to the public safety." *U.S. v. Perez-Garcia*, 96 F.4th 1166, 1189 (9th Cir. 2024) (quoting *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting), abrogated by *Bruen*, 597 U.S. at 17, 142 S.Ct. 2111) (emphasis added).

Furthermore, the Ninth Circuit found that a prohibition must be individually tailored by a judicial officer. "Relatedly and importantly, the firearm condition at issue here is individually tailored and applied only after consideration by a ***judicial officer***." *U.S. v. Perez-Garcia*, 96 F.4th 1166, 1189 (9th Cir. 2024) (emphasis added). And the Court found that a firearm prohibition must be the least restrictive means available. *Id* at 1190. Finally, *Perez-Garcia* emphasized that the temporary nature of the litigants' firearm rights prohibition. "[T]he firearm condition is a temporary one,

11

lasting only through the pendency of trial, see 18 U.S.C. § 3142(a), and the condition is imposed only upon individualized consideration by a judicial officer." *Id* at 1181. Here, County Rules do not bear any resemblance to the protections afforded to pretrial releasees. Plaintiff's CCW denial is based in part on an investigation for a crime. An investigation does not afford any judicial proceeding[5] at all.

As the Supreme Court has observed, "[t]he mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct." *Schware v. Bd. of Bar Exam. of State of N.M.,* 353 U.S. 232, 241 (1957). Here, Plaintiff was merely investigated for a crime. An investigation is even less probative than an arrest. Many courts post-*Bruen* have found that a mere arrest is insufficient to remove Second Amendment rights. In *Davis v. Yenchko,* 2023 Ill. Cir. LEXIS 4 an Illinois state court found Illinois law which prohibited firearms ownership to certain people "to be unconstitutional as applied to persons charged with a felony but not yet convicted of a felony." *Id at* *13. "In this case, Plaintiffs were disarmed solely based on an *accusation*. There was no hearing, such as a bond hearing, to determine whether these Plaintiffs were dangerous and, thus, should be disarmed pending trial." *Id* at * 7. Similarly, in *Allen v. District of Columbia,* Civil Action No. 20-cv-2453 (TSC), 2023 U.S. Dist. LEXIS 60950, at *27 (D.D.C.

---

[5] And as to the expired temporary restraining order, no findings were made and Kahalewai agreed to a temporary restriction.

12

Mar. 31, 2023) the court reviewed a challenge to the District of Colombia's policy of denying carry permits based on certain arrests that did not lead to a conviction. In denying the motion to dismiss the Court found "the fact that Allen may have been suspected of criminal conduct in the past (but not charged) does not permit Defendants to restrict his Second Amendment rights." *Id* at \*27. "Under federal law [18 U.S.C. § 922(n)], a person merely *charged* with a felony cannot acquire firearms or ammunition but remain free to continue to possess firearms already in their possession." *Davis v. Yenchko*, 2023 Ill. Cir. LEXIS 4, \*7. For another, the County "has not attempted to explain why its other statutory restrictions, none of which the Plaintiffs have challenged, do not reduce the risk of danger already." *Worth* WL 3419668, at \*10.

The legal rule that can be derived from *Rahimi*, circuit precedent and the other cases cited to, is that a person cannot have his Second Amendment rights removed unless there has been a *judicial determination* that they will be a danger to themselves or others if they are allowed to carry a firearm.[6] "[T]he historical tradition

---

[6] This is in line with the treatment of the mentally ill. Currently, in virtually every state a person can only be committed against their will if they present a danger to themselves, and to others, and a judge must make the decision, after notice and a hearing. https://crsreports.congress.gov/product/pdf/R/R47571 . The same rule applies for federal dispossession for mental illness. Under federal law, a person only loses his firearm rights due to an involuntary commitment if that commitment was ordered by a judge. *See Stokes v. United States DOJ*, 551 F. Supp. 3d 993, 1004 (N.D. Cal. 2021) ("there was no judicial involvement, much less "robust judicial involvement," so under *Mai*, there was no "commitment" within the meaning of Section 922(g)(4)."); *See also United States v. Rehlander*, 666 F.3d 45, 48 (1st Cir. 2012) (holding the same) ("the right to possess arms … is no longer

of disarming "unlawful" individuals appears to mainly involve disarming those

convicted of serious crimes after they have been afforded criminal process." *United*

*States v. Connelly*, No. EP-22-CR-229(2)-KC, 2023 U.S. Dist. LEXIS 62495, at *27

(W.D. Tex. Apr. 6, 2023). County's regulations "in contrast, disarms those who

engage in criminal conduct that would give rise to misdemeanor charges, without

affording them the procedural protections enshrined in our criminal justice system."

*Id.* Here, there has been no judicial determination that Plaintiff is dangerous.  Rather

Plaintiff was merely investigated for a crime.  And as a result, there was no

individualized consideration by a judicial officer. And there has been no showing that

denying Plaintiff a concealed carry permit is the least restrictive means to prevent any

---

something that can be withdrawn by government on a permanent and irrevocable basis without due process."). "As *Rehlander* persuasively demonstrates, an *ex parte* hearing is not enough to fall within the Section 922(g)(4) prohibition; some adversary process is necessary for a "commit[ment]" under Section 922(g)(4)." *United States v. McMichael*, 350 F. Supp. 3d 647, 661 (W.D. Mich. 2018). As for the history, *See Mai v. United States*, 974 F.3d 1082, 1090 (9th Cir. 2020) (Bumatay, Dissenting from denial of en banc) (quoting, Henry Care, *English Liberties, or the Free-born Subject's Inheritance* 329 (6th ed. 1774) (noting that "judicial officials were authorized to "lock up" "lunatics" or "other individuals with dangerous mental impairments" (thereby depriving them of all rights), they were "locked up only so long as such lunacy or disorder shall continue, and no longer.""); *See also Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 706 (6th Cir. 2016) ("the common law prohibited the warrantless arrest of those thought to have lost their reason, and it allowed for the deprivation of the fundamental right to liberty or the fundamental right to control one's property only upon a valid judgment from a civil tribunal,") (citing Henry F. Buswell, *The Law of Insanity in its Application to the Civil Rights and Capacities and Criminal Responsibility of the Citizen* 17 (1885) at 26-28) (*Batchelder*, Concurring).

14

perceived risk. *Perez-Garcia* is further supportive of the unconstitutionality of the County's actions because County believes it can disarm Plaintiff; §26150(a)

Thus, the prohibition here is not temporary[7] in nature. County believes that it has the right to deny Plaintiff for 2 years based on nothing more than an investigation and dismissed case. *Id.* Circuit precedent dictates that Plaintiff's denial as well as County's rules are unconstitutional. The same reasoning applies to County's use of lapsed protection orders to deny Plaintiff's firearm rights. There is no historical tradition of denying firearm rights based on lapsed protection orders, investigations or dismissed cases. "[The government bears the burden of showing that any regulation infringing on Second Amendment rights is consistent with this nation's historical tradition of firearm regulation." *U.S. v. Perez-Garcia*, 96 F.4th 1166, 1175 (9th Cir. 2024). As *Rahimi* makes clear, a current restraining order and a lapsed restraining order are two different things. That is because a lapsed restraining order is not a determination that a person is currently dangerous. Any historical firearm prohibition County might produce is distinguishable from the lapsed protective orders at issue here. As the *Rahimi* Court found "like surety bonds of limited duration, Section 922(g)(8)'s restriction was temporary as applied to Rahimi. Section 922(g)(8) only prohibits firearm possession

---

[7] Other than in the technical sense.

15

so long as the defendant "is" subject to a restraining order." *Rahimi* at *10. Once a

historical prohibition ended, it could not be used to justify further firearm restrictions.

On a more fundamental level, County cannot rely on lapsed protective orders

to justify the removal of firearms rights because these lapsed orders are not a judicial

determination that Plaintiff is currently dangerous. "A legislature's ability to deem a

category of people dangerous based only on belief would subjugate the right to bear

arms 'in public for self-defense' to 'a second-class right'." *Worth* WL 3419668, at

*11. To the extent there was any judicial finding[8] that was only for the duration of the

protective order and has no bearing on Plaintiff's current condition.  County's

reliance on the protective orders issued against Plaintiff is faulty because by their

own terms the protection orders have lapsed. Therefore, they have no probative value

in determining whether Plaintiff is currently dangerous. Furthermore, there has been

no showing that this is the least restrictive means to ensure public safety by a judicial

officer.  And as with the use of the investigations, the use of lapsed protective orders

is not temporary as the term was contemplated by *Perez-Garcia*. Rather, here the

prohibition is for ten years. There is no historical tradition for denying firearms rights

based on lapsed protective orders. Plaintiff's denial is unconstitutional.

**F.  Plaintiffs Due Process Rights Have Been Violated**

County has violated Plaintiff's Due Process Right. This is because County

---

[8] Plaintiff does not concede that such a finding was made.

16

labeled Plaintiff unsuitable to carry a firearm without adequate procedures.  To

demonstrate a claim for procedural due process a litigant must fulfill the test laid out

in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This

test requires that we balance: "(1) the private interest at stake; (2) the risk of an

erroneous deprivation of that interest through the procedures used and the probable

value (if any) of alternative procedures; (3) the government's interest, including the

possible burdens of alternative procedures." *Id.*  Here, *Bruen* expressly holds that

Plaintiff has a constitutional right to carry a firearm for lawful self-defense. Thus,

Plaintiff has a protected liberty interest at stake in this litigation.

There is a great risk of erroneous deprivation because County relies on

unreliable information to form a determination of *current* unsuitability such as

investigations into a crime and lapsed protection orders. And County did not alert

Plaintiff that he had to present evidence *beforehand* to demonstrate he is suitable to

carry a firearm.[9] "Actually," as the D.C. Circuit has explained, "a collection of

dismissed, abandoned or withdrawn arrest records are no more than gutter rumors

when measured against any standards of constitutional fairness to an individual and,

along with records resulting in an acquittal are not entitled to any legitimate law

_____

[9] County rules provide that the burden of disqualifying Plaintiff rests with County,
though the level of the burden of proof is not specified.  It is improper burden
shifting to require Plaintiff to disprove County's unlawful disqualification when
there is no basis to disqualify him ab initio.

enforcement credibility whatsoever." *Utz v. Cullinane*, 520 F.2d 467, 479 (D.C. Cir. 1975) (quoting *United States v. Dooley*, 364 F.Supp. 75, 77 (E.D.Pa.1973).

The procedures used by County are woefully inadequate in light of the fact a constitutional right is at stake. County labeled Plaintiff unsuitable to exercise a constitutional right even after Appeal  "when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (holding that termination of parental rights must be supported by clear and convincing evidence rather than a "fair preponderance") (quoting *Addington v. Texas*, 441 U.S. 418, 424 (1979)).

The Supreme Court has repeatedly held that "[a]n essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted). In the civil forfeiture context, for example, the Court has held that the government must generally provide notice and a hearing *before* seizing real property, *United States v. James Daniel Good Real Property*, 510 U.S. 43, 62 (1993). "In *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), we held that a convicted felon serving his sentence has a liberty interest, not extinguished by his confinement as a

18

criminal, in not being transferred to a mental institution and hence classified as

mentally ill without appropriate procedures to prove that he was mentally ill."

*Foucha v. Louisiana*, 504 U.S. 71, 78–79 (1992) "The interest of the prisoner in not

being arbitrarily classified as mentally ill and subjected to unwelcome treatment is

also powerful, however; and as the District Court found, the risk of error in making

the determinations required by § 83-180 is substantial enough to warrant appropriate

procedural safeguards against error." *Vitek v. Jones*, 445 U.S. 480, 495, 100 S. Ct.

1254, 1265 (1980). Those include notice and a hearing. *Id* at 494. Importantly the

Supreme Court has found that the there is a liberty interest at play in being labeled

mentally ill. "It is indisputable that involuntary commitment to a mental hospital after

a finding of probable dangerousness to self or others can engender adverse social

consequences to the individual. Whether we label this phenomena "stigma" or

choose to call it something else is less important than that we recognize that it can

occur and that it can have a very significant impact on the individual." *Addington v.*

*Texas*, 441 U.S. 418, 425–26 (1979); *See also Vitek v. Jones*, 445 U.S. 480, 492

(1980) (reaffirming holding). Similar protections should be afforded before being

labeled "unsuitable".

If due process requires a hearing prior to seizing real property, then due

process assuredly requires that Plaintiff be given an adversarial hearing *prior* to being

deprived of a constitutional right as well. County may argue that its process satisfies

19

due process because Plaintiff has the possibility of an appeal. *See* Senate Bill 2 (SB2) (Appeal Procedures). However, the Supreme Court has already found that a procedurally defective proceeding is not cured by the possibility of an appellate remedy. "Nor, in any event, may the State's trial court procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication." *Ward v. Monroeville*, 409 U.S. 57, 62 (1972). Here, Plaintiff was provided inadequate procedure *before* his firearms carry application was denied. Pursuant to precedent, the possibility of an appeal afterwards does not cure the defective original proceeding. As shown, Plaintiff's denial and County's Rules have a high risk of erroneous determination.

Moreover, the government has no interest in not providing a hearing or using alternative criteria for evaluating suitability. "Requiring the Government to postpone seizure until after an adversary hearing creates no significant administrative burden." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 59 (1993). County Rules already mandate that an applicant be allowed an appeal. "From an administrative standpoint it makes little difference whether that hearing is held before or after the seizure." *Id.* Moreover, RSO could limit itself to relying on qualifying convictions and other reliable criteria if it wished to minimize the need for a hearing. As it stands any harm to RSO "is minimal in comparison to the injury occasioned by erroneous seizure." *Id.*

Pursuant to the governing case law, County's Rules and Plaintiff's firearm carry application denial violate due process. As shown above, County's denial and the RSO's rules are unconstitutional. This court should find Plaintiff has demonstrated a likelihood of success on the merits.

## IV.    <u>Plaintiff will suffer irreparable harm</u>

The remaining preliminary injunction factors follow readily. Plaintiff will suffer irreparable harm because he will risk arrest while he exercise his constitutional right to carry a **Weapon** unless a preliminary injunction is granted. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). "This analysis does not change where the constitutional violation at issue is a Second Amendment violation." *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023). *See also Ezell v. City of Chi.,* 651 F.3d 684. 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable and having no

adequate remedy at law.").

## V.    Granting the TRO/PI is in the Public Interest and Serves Equity

The last two preliminary injunction elements merge when the government is the
defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)
(citation omitted). When challenging government action that affects the exercise of
constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the"
law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth
Circuit has made clear, "all citizens have a stake in upholding the Constitution" and
have "concerns [that] are implicated when a constitutional right has been violated."
*Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The State "cannot suffer harm
from an injunction that merely ends an unlawful practice or reads a statute as required
to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir.
2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is
clear that it would not be equitable . . . to allow the state . . . to violate the requirements
of federal law." (citations omitted)). [W]e *presume* that a constitutional violation causes
a preliminary injunction movant irreparable harm and that preventing a constitutional
violation is in the public interest. *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023).
This Court should grant a preliminary injunction because it both serves equity and is in
the public interest to end County's unconstitutional practices.

## VI.    Waiver of Bond is Proper and Appropriate Under These Circumstances

"Notwithstanding its seemingly mandatory language," stating that the movant must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Weaver v. City of Montebello*, 370 F.Supp.3d 1130, 1139 (C.D. Cal. 2109) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). The court may properly dispense with any such bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiffs have a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). All these factors are true here, thus rendering a waiver both proper and appropriate.

## VII.    This Court Should Consolidate Pursuant to Rule 65(a)(2)

Rule 65(a)(2) of the Federal Rules of Civil Procedure state "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. This Court

should do so here because "[g]iven the expedited and predominately legal nature of the questions presented by this litigation," the "evidence presented by the parties through the briefing and hearing on the motions for preliminary injunctions will be relevant to adjudicating the Plaintiffs' claims on the merits." *Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at *2 (D. Mont. Sep. 16, 2020). Here, there cannot be any serious dispute as to what the County rules say or the reasons for County denying Plaintiff's application. Therefore, the matter before this court is predominantly legal in nature. Moreover, Plaintiff is currently suffering irreparable harm and would thus benefit from a consolidated hearing.  Thus, this case is a prime candidate for consolidation.

## VIII.     Conclusion

Plaintiff's CCW denial is unconstitutional. As are County's and RSO's rules which gave RSO the authority to do so. *Bruen* command

s that government officials cannot be given authority to use their subjective discretion to deny Second Amendment rights. It is also unconstitutional for the County to deny Second Amendment rights based on an investigation of a crime and two now lapsed protection orders. This Court should enter a preliminary injunction which orders STATE OF CALIFORNIA to cease with it's CCW Scheme and adopt permitless carry and Remove the burdensome and expensive CCW scheme.

24

15.[10] for the pendency of litigation.

DATE Corona, California; April 10, 2025.

Respectfully submitted,
In Pro Se


DAVID PHILLIP VALLEJOS

_____