ROB BONTA
Attorney General of California
JOHN D. ECHEVERRIA
Supervising Deputy Attorney General
JERRY T. YEN
Deputy Attorney General
State Bar No. 247988
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7836
 Fax: (916) 324-8835
 E-mail: Jerry.Yen@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his official capacity as California Attorney General*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID PHILLIP VALLEJOS,**<br><br>Plaintiff,<br><br>v.<br><br>**ROB BONTA, in his official capacity as the Attorney General of the State of California and CHAD BIANCO, in his official capacity as the Riverside County Sheriff,**<br><br>Defendants. | Case No. 5:25-cv-00350<br><br>**DEFENDANT ROB BONTA'S SPECIAL APPEARANCE AND OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: April 2, 2025<br>Time: 1:30 p.m.<br>Courtroom: 5C<br>Judge: Hon. Sherilyn Peace Garnett |

# TABLE OF CONTENTS

                                                                                                            **Page**

Introduction ........................................................................................................... 1
Background ........................................................................................................... 2
      I.     California's Regulations on Carrying Firearms in Public .................... 2
      II.    Plaintiff's Lawsuit ................................................................................ 3
Legal Standard ...................................................................................................... 3
Argument ............................................................................................................... 4
      I.     Plaintiff Failed to Properly Serve the Attorney General ...................... 4
      II.    Plaintiff Has Not Shown a Likelihood of Success on the Merits ......... 5
            A.    Shall-Issue Licensing Regimes Are Constitutional Under *Bruen* ................................................................................................ 6
            B.    Plaintiff's Challenge to California's Concealed-Carry Licensing Regime Fails Under *Bruen*'s Text-and-History Standard ............................................................................................. 7
            C.    California's CCW Licensing Laws Do Not Violate Due Process ............................................................................................ 10
      III.   Plaintiffs Have Not Established Irreparable Harm ............................ 11
      IV.   The Balance of the Equities and Public Interest Weigh Strongly Against Injunctive Relief .................................................................... 12
Conclusion ........................................................................................................... 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Chalk v. U.S. Dist. Court Cent. Dist. Cal.*
  840 F.2d 701 (9th Cir. 1988) ............................................................................... 12

*City of Los Angeles v. Patel*
  576 U.S. 409 (2015) ............................................................................................. 5

*Devose v. Herrington*
  42 F.3d 470 (8th Cir. 1994) ................................................................................ 11

*Direct Mail Servs., Inc. v. Eclat Computerized Techs., Inc.*
  840 F.2d 685 (9th Cir. 1988) ................................................................................ 4

*Garcia v. Google*
  786 F.3d 733 (9th Cir. 2015) ............................................................................ 3, 5

*Gianna Enters. v. Miss World (Jersey) Ltd.*
  551 F. Supp. 1348 (S.D.N.Y. 1982) ..................................................................... 4

*In re D.L.*
  93 Cal. App. 5th 144 (Ct. App. 2023) ................................................................ 10

*Maryland v. King*
  567 U.S. 1301 (2012) ......................................................................................... 12

*Moody v. NetChoice, LLC*
  603 U.S. 707 (2024) ............................................................................................. 5

*Moore v. Reddy*
  No. SAG-24-00361, 2024 WL 3638030 (D. Md. Aug. 2, 2024) ......................... 5

*NetChoice v. Bonta*
  __ F. Supp. 3d __, 2024 WL 5264045 (N.D. Cal. Dec. 31, 2024) ....................... 5

*New York State Rifle & Pistol Ass'n v. Bruen*
  597 U.S. 1 (2022) ........................................................................................ *passim*

*Nken v. Holder*
  556 U.S. 418 (2009) ........................................................................................... 12

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*
   810 F.3d 631 (9th Cir. 2015) .................................................................. 11

*Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*
   757 F.2d 1058 (9th Cir. 1985) .................................................................. 5

*People v. Mosqueda*
   97 Cal. App. 5th 399 (Ct. App. 2023) ...................................................... 2

*Stanley v. Univ. of S. Cal.*
   13 F.3d 1313 (9th Cir. 1994) .................................................................... 3

*Tracy Rifle & Pistol LLC v. Harris*
   118 F. Supp. 3d 1182 (E.D. Cal. 2015) .................................................. 12

*United States v. Libertad*
   681 F. Supp. 3d 102 (S.D.N.Y. 2023) ...................................................... 7

*United States v. Rahimi*
   602 U.S. 680 (2024) .......................................................................*passim*

*United States v. Salerno*
   481 U.S. 739 (1987) .................................................................................. 6

*Wash. State Grange v. Wash. State Republican Party*
   552 U.S. 442 (2008) .................................................................................. 5

*Winter v. Nat. Res. Def. Council, Inc.*
   555 U.S. 7 (2008) ................................................................................. 3, 4

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

California Penal Code
   § 25605 ............................................................................................................. 2
   § 25850(a) ........................................................................................................ 2
   § 26010 ............................................................................................................. 2
   § 26035 ............................................................................................................. 2
   § 26055 ............................................................................................................. 2
   § 26150 ............................................................................................................. 2
   § 26150(a) ........................................................................................................ 2
   § 26150(b)(2) ................................................................................................... 2
   § 26155 ............................................................................................................. 2
   § 26155(a) ........................................................................................................ 2
   § 26155(b)(2) ................................................................................................... 2
   § 26185(a) ........................................................................................................ 2
   § 26195(a) ........................................................................................................ 2
   § 26206 ........................................................................................................... 11

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   Second Amendment ............................................................................... *passim*

**COURT RULES**

Federal Rule of Civil Procedure
   Rule 4 ............................................................................................................... 4

# INTRODUCTION

As a preliminary matter, Plaintiff failed to serve the California Attorney General with a sealed and signed summons issued by the court clerk.[1]  Because of this improper service, the Court lacks jurisdiction over the Attorney General at this time and should deny Plaintiff's preliminary injunction motion on that basis.  On the merits, Plaintiff's motion fares no better.  Plaintiff's preliminary injunction motion stems from the denial of his application for a concealed carry weapon (CCW) license by the Riverside County Sheriff.  Instead of remedying any issues with his CCW application, Plaintiff seeks an injunction ordering the State of California to cease enforcing its CCW licensing requirements and allow individuals to carry a firearm in public without a license.

The Second Amendment does not protect an unqualified right to carry a weapon in public without a license.  Under the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Second Amendment "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." *Id*. at 79 (Kavanaugh, J., concurring).  Indeed, the Supreme Court made clear that shall-issue licensing regimes, like California's licensing regime, pass constitutional muster. *Id*. at 38 n.9 (majority opn.).

Accordingly, Plaintiff is unlikely to succeed on the merits of his facial Second Amendment challenge to California's CCW licensing scheme nor has he met any of the other factors required to justify a preliminary injunction.  The State and its residents, in contrast, would suffer irreparable harm if California's CCW licensing requirements—which ensure that only law-abiding, responsible citizens may carry

---

[1] The Attorney General, specially appearing, plans to file a motion to dismiss for, *inter alia*, insufficient service of process.  The Attorney General is not waiving any objection regarding service of process by filing this opposition to Plaintiff's preliminary injunction motion as ordered by the Court. *See* ECF No. 17.

firearms in public—could not be enforced, upending the status quo and imperiling public safety. Plaintiff's preliminary injunction motion should be denied.

## BACKGROUND

**I.  CALIFORNIA'S REGULATIONS ON CARRYING FIREARMS IN PUBLIC**

California has a "multifaceted statutory scheme regulating firearms." *People v. Mosqueda*, 97 Cal. App. 5th 399, 406 (Ct. App. 2023). Law-abiding adults in California may carry a firearm in or around their homes, at their own places of business, or on other private property they lawfully possess. Cal. Penal Code §§ 25605, 26035, 26055. They may also transport firearms (unloaded and properly secured) between authorized locations and for specific purposes. *Id*. §§ 25505, 25520, 25525, 25530. However, California prohibits the carrying of a loaded firearm, whether open or concealed, "on the person or in a vehicle in any public place or on any public street." *Id*. § 25850(a). This prohibition does not apply to persons who are licensed to carry a concealed firearm.[2] *Id*. § 26010. Thus, only individuals who have been issued a CCW license may carry a loaded firearm in public. The State has delegated the authority to issue such licenses to sheriffs or chiefs of police. *Id*. §§ 26150, 26155. To obtain a CCW license from a local licensing authority, an applicant must establish local residence, or a local principal place of employment or business where the applicant spends a substantial amount of time; completion of a firearm safety course; and that the applicant is the recorded owner of the firearm.[3] *Id*. §§ 26150(a), 26155(a). An applicant must also pass a background check to confirm the applicant is not prohibited under state or federal law from possessing or owning a firearm. *Id*. §§ 26185(a), 26195(a).

---

[2] Licenses generally authorize only concealed carry; but in counties with fewer than 200,000 residents, the sheriff may issue a license allowing open carry in that county only. *Id*. §§ 26150(b)(2), 26155(b)(2).

[3] At the time Plaintiff submitted his CCW application in 2023, the relevant statutes required an applicant to also show good moral character and "[g]ood cause" for a license. Former §§ 26150(a) and 26155(a) (superseded by Senate Bill 2 (Jan. 1, 2024)).

## II. PLAINTIFF'S LAWSUIT

Plaintiff David Vallejos alleges that he legally owns a firearm and is not disqualified from owning or possessing a firearm under California or federal law. Pl.'s Mem. in Supp. of Prelim. Mot. (PI Mem.), ECF No. 8 at 2.[4] Plaintiff contends that he applied for a CCW license in July 2022 and that his application was denied in June 2023. *Id*. He then claims that he filed an appeal in March 2024 and his appeal was denied in July 2024. *Id*. He now alleges that California's CCW licensing scheme violates the Second Amendment and requests an injunction prohibiting California from enforcing its CCW licensing laws. Compl. ¶¶ 45, 51, 52; *see also* PI Mem. at 24.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as a matter of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To prevail, "a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) that an injunction is in the public interest." *Id*. at 7, 20. Preliminary injunctions that go "beyond simply maintaining the status quo *pendent lite*" are "particularly disfavored." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). A movant seeking such an injunction faces a "doubly demanding" burden of not only satisfying the factors for a preliminary injunction, but also "establish[ing] that the law and facts *clearly favor*" injunctive relief. *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

---

[4] Plaintiff cites several allegations in the complaint. *Id*. However, the complaint does not include those specific paragraph citations nor does it make any allegations regarding his CCW license application. *See* Complaint, ECF No. 1.

3

## ARGUMENT

Plaintiff failed to properly serve the Attorney General with a signed and sealed summons. Thus, the Court does not have personal jurisdiction over the Attorney General and lacks authority to grant a preliminary injunction. The preliminary injunction motion should be denied on that basis alone.

As for the merits of the motion, Plaintiff's request for a preliminary injunction is largely based on his claim that California's CCW licensing requirements violate his Second Amendment rights. In other words, Plaintiff argues that the Second Amendment protects his right to carry a firearm in public without a license. *See* PI Mem. at 24. But the Supreme Court expressly approved licensing regimes like California's, which are "designed to ensure" that "those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens,'" including laws requiring "a background check" or "firearms safety course." *Bruen*, 597 U.S. at 38 n.9 (quoting *District of Columbia. v. Heller*, 554 U.S. 570, 635 (2008)). Accordingly, Plaintiff is not likely to succeed on the merits. Moreover, Plaintiff cannot satisfy the other *Winter* factors.

### I. PLAINTIFF FAILED TO PROPERLY SERVE THE ATTORNEY GENERAL

Federal Rule of Civil Procedure 4 requires that all defendants be served with a summons that is signed by the court clerk and bears the Court's seal. Here, Plaintiff served the Attorney General with an unsigned and unsealed summons. As reflected in the case docket, the proof of service states that Defendant Bonta was served on Feb. 21, 2025 (ECF No. 15), but the signed and sealed summons was not issued until Feb. 27, 2025 (ECF No. 13). Thus, a signed and sealed summons could not have been served. And without proper service of a summons, the Court currently does not have personal jurisdiction over Defendant Bonta. *See Direct Mail Servs., Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("a federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."); *see also Gianna*

4

*Enters. v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348, 1358 (S.D.N.Y. 1982) (service of an unsigned and unsealed summons is a "serious infraction" and "demonstrate[s] a flagrant disregard for the rules and fails to assure the person served that the summons was in fact issued by the clerk of the court"). In short, because improper service of process deprives the Court of personal jurisdiction, the Court lacks authority to grant a preliminary injunction and should deny the preliminary injunction motion on this basis alone. *See Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1066 (9th Cir. 1985) (vacating order granting preliminary injunction because the district court did not have personal jurisdiction); *see also Moore v. Reddy*, No. SAG-24-00361, 2024 WL 3638030, at *3 (D. Md. Aug. 2, 2024) (denying preliminary injunction and dismissing complaint for insufficient service of process).

## II. PLAINTIFF HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS

Even if Plaintiff had properly served the Attorney General (he did not), his preliminary injunction motion fails to demonstrate that he is likely to succeed on the merits, let alone that "the law and the facts *clearly favor*" Plaintiff's requested injunctive relief that would alter the status quo. *Garcia*, 786 F.3d at 740. The Second Amendment does not protect an unqualified right to carry a weapon in public without a license. In fact, *Bruen* makes clear that California's shall-issue concealed-carry licensing regime is constitutional. Plaintiff's facial attack on California's shall-issue licensing regime fails on the merits.[5]

---

[5] "[F]acial challenges [are] hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024); *see also NetChoice v. Bonta*, __ F. Supp. 3d __, 2024 WL 5264045, at *8 (N.D. Cal. Dec. 31, 2024) ("Facial challenges to a law's constitutionality are disfavored"). They rely on speculation about possible applications of the law, forcing courts to anticipate cases instead of deciding the matter before them, and "threaten[ing] to short circuit the democratic process." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008). Courts thus apply a "most exacting standard," *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015)—if constitutional faults do not "occur in every case, they do
(continued…)

### A. Shall-Issue Licensing Regimes Are Constitutional Under *Bruen*

The Supreme Court in *Bruen* repeated its prior assurances that the Second Amendment does not protect a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 626). The Supreme Court also noted that "nothing" in its decision "should be interpreted to suggest the unconstitutionality of . . . licensing regimes" that required applicants to "undergo a background check or pass a firearms safety course" as a condition of carrying firearms in public. *Id*. at 38 n.9. These assurances were repeated in *United States v. Rahimi* where the Supreme Court explained that "the right secured by the Second Amendment is not unlimited," does not "sweep indiscriminately," and is "not a right to keep and carry any weapon whatsoever." 602 U.S. 680, 690-92 (2024).

In *Bruen*, Justice Kavanaugh, joined by Chief Justice Roberts, wrote separately to underscore the "limits of the Court's decision." 597 U.S. at 79 (Kavanaugh, J., concurring). They reiterated the majority's view that the Second Amendment is not a "regulatory straightjacket," *id*. at 80 (quoting *id*. at 30), and *Heller*'s observation that "the Second Amendment allows a 'variety' of gun regulations," *id*. at 80 (quoting *Heller*, 554 U.S. at 626). States employing objective requirements for concealed-carry licenses "*may continue to do so*." *Id*. at 80 (emphasis added). Those requirements could include "undergo[ing] fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id*. at 80. Each of these objective requirements is a feature of California's licensing regime.

---

not justify invalidating [a challenged law] on its face." *United States v. Rahimi*, 602 U.S. 680, 701 n.2 (2024). Thus, "[a] facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

6

More importantly, *Bruen* made clear that "nothing in [its] analysis should be interpreted to suggest" that shall-issue licensing regimes are unconstitutional. *Id.* at 38 n.9. Such licensing schemes require "authorities [to] issue concealed-carry licenses whenever applicants satisfy certain threshold requirements. *Id*. at 13. They "often require applicants to undergo a background check or pass a firearms safety course," to ensure that only "those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* at 38 n.9. They do not "prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." *Id.* Accordingly, under *Bruen*, the ability of states, including California, to require a license to lawfully carry a firearm in public remains constitutional. *See United States v. Libertad*, 681 F. Supp. 3d 102, 111 (S.D.N.Y. 2023) ("'shall-issue' licensing regimes, so long as they allow persons contemplated by the Second Amendment to keep and bear arms," do not trigger *Bruen*'s historical tradition analysis).

**B.    Plaintiff's Challenge to California's Concealed-Carry Licensing Regime Fails Under *Bruen*'s Text-and-History Standard**

Although *Bruen* makes clear that licensing regimes remain constitutional, any challenge to California's concealed-carry licensing scheme would still fail under *Bruen*'s text-and-history standard for adjudicating Second Amendment claims. 597 U.S. at 22-23. Under this text-and-history approach, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with our nation's historical tradition of firearm regulation. *Id.* at 24. To justify regulations of that sort, *Bruen* held that governments are not required to identify a "historical *twin*," but need only identify a "well-established and representative historical *analogue*." *Id.* at 30. In evaluating whether a "historical regulation is a proper analogue for a distinctly modern firearm regulation," *Bruen* directs courts to determine whether the two

7

regulations are "'relevantly similar.'" *Id.* at 28-29 (quoting C. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)). The Court identified "two metrics" by which regulations must be "relevantly similar under the Second Amendment": "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 29.

The Court recently applied *Bruen* in *Rahimi*, reiterating that the *Bruen* standard does not require the government to identify a 'historical twin,' but instead need only point to a 'historical analogue.'" 602 U.S. at 700; *see also id.* at 691-92 ("the Second Amendment permits more than just those regulations identical to ones that could be found in 1791"). *Rahimi* clarified that "the appropriate [historical] analysis involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *Id.* at 691 (emphasis added).

The Supreme Court's analysis in *Bruen* demonstrates that throughout this Nation's history, states have been allowed to regulate the conditions for and methods of carrying firearms in public so long as they do not bar public carry altogether. The Court reviewed several cases from the antebellum era considering laws regulating the manner of carry and concluded that those decisions "agreed that concealed-carry prohibitions were constitutional only if they did not similarly prohibit open carry." *Bruen*, 597 U.S. at 53 (citing cases from Alabama, Louisiana, and Kentucky). The Court also noted a colonial New Jersey law that "prohibited only the concealed carry of pocket pistols . . . [and] presumably did not by its terms touch the open carry of larger [weapons]." *Id*. at 48. These cases, and the historical state laws they considered, reflected "a consensus view that States could not *altogether prohibit* the public carry of arms protected by the Second Amendment or state analogues," but that reasonable restrictions on the *manner* of carry were otherwise permissible. *Id*. at 55 (italics added). Indeed, the Court noted that state courts after the Civil War "continued the antebellum tradition of upholding concealed carry regimes that seemingly provided for open carry." *Id*. at 68 n.30.

8

1    State and local licensing laws from the 1700s and 1800s confirm the history
2    and tradition underlying California's CCW licensing scheme.  *See* Joseph Blocher,
3    *Firearm Localism*, 123 Yale L.J. 82 (2013) (explaining that firearm regulation at
4    the state and local level has deep roots in American history and tradition).  During
5    that time period, lawmakers in at least 29 states enacted 62 licensing requirement
6    laws as a pre-requisite for weapons carrying or ownership.  Declaration of Professor
7    Robert Spitzer (Spitzer Decl.) ¶ 15; *id.* Exs. B, C.[6]

8    By the Reconstruction era, municipalities across the country began enacting
9    their own licensing schemes.  For instance, in 1866, the mayor of Memphis,
10   Tennessee issued permits for the carrying of concealed weapons.  Declaration of
11   Professor Michael Vorenberg (Vorenberg Decl.) ¶ 28.[7]  St. Louis, Missouri and
12   New Orleans, Louisiana followed suit shortly thereafter.  *Id.*; Spitzer Decl. ¶ 21.  In
13   the 1870s and 1880s, Jersey City, New Jersey; Elko, Nevada; Omaha, Nebraska;
14   Hyde Park, Nashville, and Chicago, Illinois; New York City, New York; Ironton,
15   Missouri; Arkansas City and Beloit, Kansas; Astoria, Oregon; Wheeling, West
16   Virginia; St. Paul, Minnesota; Salt Lake City, Utah; and Eureka, Napa, Sacramento,
17   and San Francisco, California established permitting systems as well.  Spitzer Decl.
18   ¶¶ 22-28; Vorenberg Decl. ¶¶ 29-33.  Other municipalities around the county
19   followed suit in the ensuing decades, including in Connecticut, California,
20   Nebraska, Washington, Wisconsin, and the District of Columbia.  Spitzer Decl.
21   ¶¶ 29-31, 34-36.  State-wide licensing schemes were also enacted in the late 1800s
22   and early 1900s, including in Florida, Montana, New Jersey, Hawaii, Indiana,

---

[6] Prof. Spitzer's Declaration was originally filed in *California Rifle & Pistol Ass'n, Inc. v. Los Angeles County Sheriff's Department*, Case No. 2:23-cv-10169, ECF No. 25-1 (C.D. Cal. Feb. 21, 2024).  A true and correct copy of that declaration is attached as Exhibit 1 to the accompanying declaration of counsel.

[7] Prof. Vorenberg's Declaration was originally filed in *California Rifle & Pistol Ass'n*, ECF No. 25-2.  A true and correct copy of that declaration is attached as Exhibit 2 to the accompanying declaration of counsel.

9

Michigan, New Hampshire, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, and South Carolina. *Id.* ¶¶ 32-33, 37-38.

In sum, California's licensing regime is part of a well-established historical tradition of state and local laws ensuring that only law-abiding, responsible citizens exercise their Second Amendment rights. Those laws are comparable to California's shall-issue CCW licensing regime.

As to the burden, California's laws requiring a license to carry firearms in public impose a burden on the right to armed self-defense comparable to the burdens imposed by presumptively constitutional laws identified in *Bruen*. *Bruen*, 597 U.S. at 13 (citing approvingly the licensing schemes of 43 states); *id*. at 38 n.9 ("nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes" or other licensing requirements that are "'narrow, objective, and definite'"); *see also id*. at 79-80 (Kavanaugh, J., concurring). For example, the background check portion of the licensing requirement employs objective criteria and does not prohibit law-abiding citizens from carrying a firearm in public.

The licensing laws are also justified by the State's interests comparable to those that support the presumptively constitutional laws analyzed in *Bruen*. California's licensing laws ensure that only law-abiding, responsible citizens are authorized to carry a firearm in public. *In re D.L.*, 93 Cal. App. 5th 144, 166 (Ct. App. 2023). That is the very same justification endorsed by *Bruen*. *Bruen*, 597 U.S. at 38 n.9 (noting that conditions for a license were "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'").

**C. California's CCW Licensing Laws Do Not Violate Due Process**

Plaintiff also claims that, in denying his CCW license application, the Riverside County Sheriff "labeled Plaintiff unsuitable to carry a firearm without adequate procedures." PI Mem. at 16-17. However, the complaint contains no

allegations that any party or the CCW license application process violated Plaintiff's due process rights. *See* Compl. Thus, Plaintiff's due process arguments cannot support his request for a preliminary injunction. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (finding that because plaintiff's preliminary injunction motion raised issues different from those presented in his complaint, the newly raised issues could not provide the basis for a preliminary injunction); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (adopting the *Devose* rule for denying injunctive relief where the motion for injunctive relief lacks a sufficient nexus to the underlying complaint).

Even if the complaint raised a due process rights claim, Plaintiff only appears to be contesting the County Sheriff's CCW procedures and their application to him. PI Mem. at 18. This would not be a basis to enjoin the State's CCW licensing requirement. And any purportedly unconstitutional application of California's CCW requirements to Plaintiff would not render California's licensing requirement facially unconstitutional. Moreover, under California Penal Code § 26206, any person whose application for a CCW permit is denied is entitled to petition the superior court, during which the government bears the burden of proving that the applicant is not entitled to a license. That procedure satisfies due process, and, in fact, Plaintiff has already availed himself of that process. *See* Def. Rob Bonta's Req. for Judicial Notice, Ex. A.

### III. PLAINTIFFS HAVE NOT ESTABLISHED IRREPARABLE HARM

Plaintiff does not allege any economic injury nor does he claim, for example, that he needs urgent relief to protect himself against a specific threat—only that he has suffered a constitutional violation. Because his claim is not likely to succeed on the merits, *supra* Argument II, his allegation of irreparable harm also fails.

## IV. THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH STRONGLY AGAINST INJUNCTIVE RELIEF

The balance of equities and the public interest also militate against issuing an injunction. These factors merge when the government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, an injunction would inflict harm upon the State because "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (quotation and citation omitted). And "[t]he costs of being mistaken[] on the issue of whether the injunction would have a detrimental effect on []gun crime, violence . . . would be grave. These costs would affect members of the public, and they would affect the Government which is tasked with managing []gun violence." *Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193 (E.D. Cal. 2015), *aff'd*, 637 F. App'x 401 (9th Cir. 2016). In short, enjoining these laws would upend the status quo, which is contrary to the purpose of an injunction. *Chalk v. U.S. Dist. Court Cent. Dist. Cal.*, 840 F.2d 701, 704 (9th Cir. 1988). Having failed to show that he will suffer any harm if the CCW licensing requirements remain in effect, Plaintiff has not established that the equities and public interest favor an injunction.

## CONCLUSION

The California Attorney General respectfully requests that the Court deny Plaintiff's motion for preliminary injunction.

| | | |
|---|---|---|
| 1 | Dated: March 12, 2025 | Respectfully submitted, |
| 2 | | ROB BONTA<br>Attorney General of California |
| 3 | | JOHN D. ECHEVERRIA<br>Supervising Deputy Attorney General |
| 4 | | |
| 5 | | |
| 6 | | */s/ Jerry Yen* |
| 7 | | JERRY T. YEN<br>Deputy Attorney General<br>*Attorneys for Defendant Rob Bonta, in* |
| 8 | | *his official capacity as California Attorney General* |

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Rob Bonta, certifies that this brief contains 3,819 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 12, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California


*/s/ Jerry Yen*

JERRY T. YEN
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his official capacity as California Attorney General*

1